FILED
2025 Jul-10 PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARLA WEST,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS COMPANY, INC.; CRYSTAL CARTER; RYAN CARTER; and Fictitious Defendants "A," "B," and "C," whether singular or plural, those other persons, corporations, firms or other entities whose wrongful or negligent conduct caused the injuries and damages to the Plaintiff, all of whose true and correct names are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained,<br><br>Defendants. | ) | CASE NO. _______________<br><br>(Removed from the Circuit Court of Etowah County, Alabama No. 31-CV-2024-900300.00)<br><br>**Jury Trial Demanded** |

## NOTICE OF REMOVAL

Defendant General Motors, LLC ("GM LLC"), incorrectly identified in Plaintiff's First Amended Complaint (the operative "Complaint") as "General Motors Company, Inc.," pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446(b)(1), removes this action from the Circuit Court of Etowah County, Alabama, where it is pending as Case No. 31-CV-2024-900300.00, to the United States District Court for the Northern District of Alabama, Eastern Division.

This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff Carla West ("Plaintiff") and the only properly joined defendant, GM LLC, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court should disregard the citizenship of Defendants Crystal Carter and Ryan Carter ("Mr. Carter," "Mrs. Carter," or "the Carters") because they have been fraudulently joined. In further support of this removal, GM LLC states as follows:

## FACTUAL BACKGROUND

1. Plaintiff commenced this action on July 17, 2024, in the Circuit Court of Etowah County, Alabama, which is within the district and division to which this case is removed. Plaintiff amended her complaint the following day on July 18, 2024.

2. In her First Amended Complaint (the operative "Complaint"), Plaintiff alleges she purchased a 2007 Chevrolet Yukon (VIN: 1GKFK13007R253836) (the "Subject Vehicle" or the "Yukon") from Crystal and Ryan Carter on or about February 1, 2020. Compl. ¶ 8. She alleges the Yukon was equipped with an automatic tailgate feature, which allows a vehicle operator to open the rear hatch of the Yukon hands-free.[1] Compl. ¶ 12. Plaintiff alleges the

[1] This feature is properly referred to as the "autosense liftgate." Plaintiff's Complaint refers to the autosense liftgate feature as the "automatic tailgate." For consistency, GM LLC will refer to this feature as the automatic tailgate throughout this notice.

tailgate is designed to open all the way to the top and hold its position until it closes automatically. Compl. ¶ 12. In the event there is an obstruction preventing the automatic tailgate from closing, Plaintiff alleges it is designed to detect the obstruction and immediately reopen. Compl. ¶ 12.

3. Plaintiff alleges that when purchasing the Yukon from Mr. and Mrs. Carter, they made certain representations to her about the Yukon's automatic tailgate feature. Compl. ¶¶ 9, 46, 47, and 54. Plaintiff alleges generally that Mr. and Mrs. Carter represented to her "that the automatic tailgate of the vehicle would function properly and as intended," and "would not be a serious risk to her health and safety." Compl. ¶¶ 46, 47, 54. Plaintiff alleges Mr. and Mrs. Carter knew, or should have known, these representations were false at the time they made them, and that Plaintiff relied on these representations when purchasing the vehicle from Mr. and Mrs. Carter. Compl. ¶¶ 9, 10.

4. On or about July 19, 2022, over two years after purchasing the Yukon from Mrs. Carter, Plaintiff alleges that while she was loading and unloading items from the trunk of the Yukon at her home in Etowah County, Alabama, the automatic tailgate unexpectedly "slammed shut" on her midsection. Compl. ¶ 14. This incident caused her to sustain "substantial injuries." Compl. ¶ 14.

5. Plaintiff's Complaint named GM LLC, Mr. Carter, and Mrs. Carter as the only named defendants. Plaintiff asserts claims of negligence, wantonness, and

a violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) against GM LLC. Plaintiff asserts claims of fraud and misrepresentation against Mr. and Mrs. Carter based on their alleged representations regarding the Yukon's automatic tailgate feature.

6. Although she does not specify a specific dollar amount in her Complaint, Plaintiff seeks judgment "in an amount that exceeds the jurisdictional minimum of [the Circuit Court for Etowah County, Alabama], and which the factfinder may determine, including compensatory and punitive damages, plus interest and all costs of this proceeding."

## GROUNDS FOR REMOVAL

7. This action is removable because it is a civil action "of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). Specifically, this Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the true parties to this case—GM LLC and Plaintiff—and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This removal is timely because it is filed within 30 days of service on GM LLC, which occurred on June 10, 2025.[2] 28 U.S.C. 1446(b)(1). Mr. and Mrs.

[2] Although the case was originally filed on July 17, 2024, Plaintiff did not properly serve GM LLC until June 10, 2025. *See* Exhibit 1, Doc. 39.

Carters' consent to this removal is not necessary because they were fraudulently joined. *See* 28 U.S.C. 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants *who have been properly joined and served* must join in or consent to the removal of the action") (emphasis added).

9. All other prerequisites to removal have also been satisfied. As required under 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon GM LLC in the underlying state court action are attached as **Exhibit 1**. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed contemporaneously in the Etowah County Circuit Court.

**A. Complete Diversity Exists Between Plaintiff and All Properly Joined Defendants.**

10. Plaintiff is a resident of Etowah County, Alabama. Compl. ¶ 1. Crystal and Ryan Carter are also residents of Etowah County, Alabama. Compl. ¶¶ 3, 4. Given however, as further explained below, that Mr. and Mrs. Carter are fraudulently joined for the purpose of defeating diversity jurisdiction, their citizenship need not be considered. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

11. GM LLC is a Delaware limited liability company whose sole member is General Motors Holdings, LLC, a limited liability company also organized under the laws of Delaware. The sole member and owner of General Motors Holdings, LLC, is General Motors Company, which is a publicly traded Delaware

corporation with its principal place of business in Michigan. Because GM LLC is the only properly joined and served Defendant in this case, this action involves "citizens of different states" in accordance with 28 U.S.C. § 1332(a)(1) and complete diversity exists.

***1. Standard of review for fraudulent joinder.***

12. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Broadway v. State Farm Mut. Auto. Ins. Co.*, 4 F. Supp. 3d 1271, 1276 (M.D. Ala. 2014). A party may be fraudulently joined when there is no "reasonable possibility" a plaintiff can prove a state cause of action against the non-diverse defendant. *Id.*; *Triggs v. John Crump Toyota, Inc.*, 154 F. 3d 1284, 1287 (11th Cir. 2014); *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (noting the possibility the non-diverse defendant may be liable must be "reasonable" and not merely "theoretical").

13. The determination as to whether a defendant has been fraudulently joined is based on the plaintiff's pleadings at the time of removal. *Legg*, 428 F.3d at 1322. The court, however, may also consider additional materials outside the pleadings, such as declarations, affidavits, or deposition transcripts. *Id.* at 1322; *Broadway*, 4 F. Supp. 3d at 1276 (explaining "where the non-moving party has presented unrebutted evidence in the form of an affidavit or declaration, courts must give weight to the sworn testimony rather than unsupported allegations in the

complaint"). The removing party "bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Company*, 883 F.2d 1553, 1561 (11th Cir. 1989).

14. The analysis in resolving a claim of fraudulent joinder is similar to that used by courts when ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(b). *Legg*, 428 F.3d at 1322-23. While, generally, all "contested issues of substantive fact" should be resolved in the plaintiff's favor, when a defendant has "presented unrebutted evidence in the form of an affidavit or declaration, courts must give weight to the sworn testimony rather than unsupported allegations in the complaint." *Broadway*, 4 F. Supp. 3d. at 1276; *Legg*, 428 F.3d at 1323. Put differently, when a defendant presents sworn statements contradicting unsupported allegations contained in the plaintiff's complaint, courts may not resolve facts in the plaintiff's favor based solely on the unsupported allegations in the plaintiff's complaint. *Legg*, 428 F.3d at 1323.

**2. *The evidence before the Court shows neither Mr. or Mrs. Carter made any representations to Plaintiff about the automatic tailgate, or that they knew or had reason to know of any alleged defect with the automatic tailgate. As such, there is no reasonably possibility Plaintiff can prove a claim of fraud or misrepresentation against the individual defendants.***

15. Crystal and Ryan Carter, the individually named Defendants, are due to be dismissed from this suit because there is no "reasonable possibility" Plaintiff can maintain a claim of fraud or misrepresentation against them. As Mrs. Carter

declares in her sworn statement, attached as **Exhibit 2**, at no point did she or her husband make any representations to, or otherwise discuss, the automatic tailgate feature with Plaintiff when they sold their Yukon to Plaintiff. Mrs. Carter explained that neither she nor her husband ever had any issues or problems with the Yukon, including with the automatic tailgate feature, and that the automatic tailgate was working properly at the time she sold the Yukon to Plaintiff. To the extent they did have an issue with the automatic tailgate not working properly or as intended, she swore they would have told Plaintiff.

16. Mrs. Carter's sworn statement directly contradicts Plaintiff's allegations that she or her husband made any false representations of material fact to Plaintiff about the automatic tailgate, or that they had actual knowledge or a reason to know of any issues with the tailgate which they suppressed or concealed from Plaintiff. Therefore, absent any additional evidence presented by Plaintiff that is sufficient to raise an issue of material fact, the sworn testimony of Mrs. Carter controls over the unsupported allegations of Plaintiff's Complaint. *See Legg*, 428 F.3d at 1323 (explaining the court "in the absence of any proof" the court may not "assume that the nonmoving party could or would prove the necessary facts") (*quoting Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)). As such, because the evidence before the Court shows Plaintiff there is not a reasonably possibility Plaintiff can prove a fraud or misrepresentation

claim against the individually named defendants, they are due to be dismissed from this case.

***3. Plaintiff's Complaint fails to meet the heightened pleading requirement of Ala. R. Civ. P. 9(b) with respect to her claims of fraud and misrepresentation against the individual defendants, and it should be dismissed as a result.***

17. While federal courts sitting in diversity jurisdiction ordinarily apply federal procedural law and state substantive law, because the inquiry in conducting a fraudulent joinder analysis pertains to whether there is a reasonably possibility a plaintiff would be able to establish a cause of action against the resident defendant in state court, federal courts apply state procedural law on motions to dismiss for failure to state a claim. *Broadway*, 4 F. Supp. 3d at 1277 (*citing Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1283-84 (11th Cir. 2006)). As such, Alabama's pleading requirements apply to Plaintiff's Complaint.

18. Alabama Rule of Civil Procedure 9(b), like its federal counterpart, requires claims of fraud and misrepresentation be plead with a heightened level of particularity.[3] *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288, 289 (Ala. 1981); *see Van Loock v. Curran*, 489 So. 2d 525, 534 (Ala. 1986) (applying the Rule 9(b) pleading standard to test the sufficiency of the plaintiff's misrepresentation claim);

[3] Courts have emphasized this rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged . . . ." *Brooks v. Blue Cross and Blue Shield*, 116 F.3d 1364, 1370-71 (11th Cir. 1997). Although *Brooks* interprets Federal Rule of Civil Procedure 9(b), the Committee's Comments to Alabama Rule of Civil Procedure 9(b) make clear the two rules are "identical."

*see also Crum v. Johns Manville, Inc.*, 19 So. 3d 208, 219 (Ala. Civ. App. 2014) (holding that plaintiff's misrepresentation claim was properly dismissed for failure to plead with sufficient particularity under Rule 9(b)).

19. This heightened standard does not mean that every element must be plead with particularity, but that the pleader "must use more than generalized or conclusory statements when setting out the allegations of fraud." *Robinson*, 399 So. 2d at 289. Thus, to properly state a claim of fraud or misrepresentation under Rule 9(b), the pleader must "state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained." *Id.*; *see* Committee Comments to Rule 9(b).

20. In addition, courts have also held the identity of the specific individual who made the statement must be plead under Rule 9(b), as well as the manner in which the misrepresentation was made. *See Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (to satisfy Rule 9(b) the complaint must set forth "precisely what statements were made," the "time and place of each such statement," the "person responsible" for making the statement, "the content of the statement," the "manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud") (*quoting Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)); *see also Smith v. Cotton States Mut. Ins. Co.*, 154 So. 3d 141, 149 (Ala. Civ. App. 2014) (dismissing the plaintiff's

fraud claim, in part, because he failed to plead the identity of the specific agent who made the alleged misrepresentation on behalf of the defendant).

21. If a plaintiff omits or fails to plead any of these details with sufficient specificity, the plaintiff's complaint is due to be dismissed for failure to state a claim. *See Robinson*, 399 So. 2d at 290. For example, in *Robinson*, the Alabama Supreme Court affirmed the trial court's dismissal of the plaintiff's fraud and misrepresentation claims because it found the plaintiff failed to allege the "time" or "the location of the alleged misrepresentation." *Id.* It further held that the plaintiff, who alleged that "Allstate" made the alleged misrepresentation, failed to identify the specific agent who made the misrepresentation. *Id.*

22. Similarly, in *Crum*, the Alabama Court of Civil Appeals affirmed dismissal of the plaintiff's fraud claim for failure to plead with the requisite specificity under Rule 9(b). *Crum*, 19 So. 3d at 219. The plaintiff alleged three different alleged misrepresentations made by the defendant. *Id.* at 218-19. The court found, however, that the plaintiff failed to allege "*when* any of [the] misrepresentations were made" or "*where* they were made." *Id.* at 219 (emphasis added).

23. Further, in *Smith*, the Alabama Court of Civil Appeals affirmed the trial court's finding of summary judgment in favor of a defendant as to the plaintiff's misrepresentation claim on the basis that the plaintiff failed to plead the

time or place of the alleged misrepresentations. 154 So. 3d at 149. The court also noted that the plaintiff failed to "indicate the agents who allegedly made the" misrepresentations." *Id.*

24. Finally, in contrast to *Robinson*, *Crum*, and *Smith*, in *Phillips Colleges of Ala., Inc. v. Lester*, the Alabama Supreme Court found the plaintiff's complaint was specific enough to allege a viable fraud claim. 622 So. 2d 308, 311 (Ala. 1993). As it pertained to the allegations of the time and place of alleged misrepresentations, the plaintiff specified the date ("on or about October 12, 1987") and the place ("the school") where the alleged misrepresentations were made. *Id.* The Alabama Supreme Court held these facts, among others, sufficient to meet Rule 9(b)'s heightened pleading requirement. *Id.*

25. Here, similar to *Crum*, *Smith*, and *Robinson*, and in contrast to *Phillips*, Plaintiff's Complaint fails to properly allege when the misrepresentation was allegedly made; where it was made; the manner in which it was communicated; and specifically by whom it was made. Plaintiff's Complaint also fails to satisfy Rule 9(b) in that it also fails to specifically allege the material fact Plaintiff claims was misrepresented.

26. First, as to *when* the alleged misrepresentation was made, Plaintiff's Complaint states only that she purchased the Yukon from the Carters "on or about February 1, 2020" and "at the time Plaintiff purchased the vehicle, she relied on

certain representations made by Defendants Crystal and Ryan Carter as to the vehicle's condition, namely the functionality of the automatic tailgate." Compl. ¶¶ 8, 9. Plaintiff does not, however, specify when Mr. or Mrs. Carter actually made the alleged misrepresentation regarding the automatic tailgate. She does not, for example, allege that the misrepresentation was made on the date of the sale, or whether it was made during prior discussions in negotiating the sale. She only alleges, as discussed, that she "relied on" the representation when she purchased the car on or about February 1, 2020. Her Complaint is otherwise silent as to when the alleged misrepresentations were actually made.

27. Second, the Complaint does not state *where* and *in what manner* the misrepresentation was made. At most, Plaintiff's Complaint alleges that her injury occurred on or about July 17, 2022, at her home in Etowah County, Alabama. It does not state, however, the specific location at which the Plaintiff alleges Mr. Carter or Mrs. Carter made the alleged misrepresentation. It is also silent as to the manner in which it was made (*e.g.,* through personal, face-to-face communications, during a phone call, in an email, or in an advertisement posted online).

28. Third, the Complaint fails to allege *who* specifically made the alleged misrepresentation to Plaintiff. Plaintiff brings her causes of action against both Mr. and Mrs. Carter, and consistently refers to them jointly throughout the Complaint. Consistent with *Robinson* and *Smith*, however, Plaintiff must state

who specifically made the alleged misrepresentation. By failing to specify whether Mr. Carter, Mrs. Carter, or both of them made the misrepresentation (by, for example, discussing the automatic tailgate on a three-way call) the Complaint fails to satisfy Rule 9(b).

29. Finally, Plaintiff's Complaint fails to allege with sufficient specificity the material fact she claims was misrepresented. In her Complaint, Plaintiff alleges that Mr. and Mrs. Carter misrepresented that the "automatic tailgate would function properly and as intended." Compl. ¶¶ 46, 47, 54. As discussed more thoroughly below, this allegation, as plead, suggests Mr. or Mrs. Carter's representation to Plaintiff was a prediction or opinion that the tailgate would continue to operate as intended for an indefinite period in the future, as opposed to a statement of a then-existing material fact about the automatic tailgate (*e.g.* that the automatic tailgate was functional at the time the Yukon was sold).

30. In other words, there is a difference between allegedly representing that the automatic tailgate was functional at the time the Yukon was sold when it was not, and representing that the automatic tailgate would be functional in the future for a certain period of time. At a minimum, however, there is ambiguity in the specific misrepresentation Plaintiff alleges. Given this ambiguity, her statement is insufficiently plead under Rule 9(b). Plaintiff is required to tell the

defendants when, where, who, how, and *what* was misrepresented. They have not done so here.

31. Ultimately, therefore, because the Plaintiff's Complaint fails to satisfy the heightened pleading standard of Rule 9(b), her claims against Mr. and Mrs. Carter are due to be dismissed, and the Court should find Mr. and Mrs. Carter are fraudulently joined as a result.

***4. Plaintiff's Complaint fails to allege a misrepresentation or statement of a material fact against the individual defendants.***

32. In order to prove a fraud or misrepresentation claim in Alabama, a plaintiff must show:

(1) a misrepresentation of a material fact;

(2) made willfully to deceive, recklessly, without knowledge, or mistakenly;

(3) that was reasonably relied on by the plaintiff under the circumstances; and

(4) that caused damage as a proximate consequence.

*Allstate Ins. Co. v. Eskridge*, 823 So. 2d 1254, 1259 (Ala. 2001). As it pertains to the first element – the misrepresentation of a material fact – courts in Alabama have consistently held that a plaintiff must show the defendant's statements were statements of *fact*, and not mere statements of opinion. *Bellsouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203, 217 (Ala. 2001).

33. Statements "of opinion amounting to nothing more than 'puffery' or predictions as to events to occur in the future are not statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim." *Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256, 259 (Ala. 1991); *see, e.g., Hughes v. Hertz Corp.*, 670 So. 2d 882, 885 (Ala. 1995) (holding the defendant's statement that a 1998 Nissan Stanza was a "fine" car was a statement of an "opinion amounting to nothing more than sales talk or mere puffery, not a misstatement concerning a material fact"); *Russell v. Wilson*, 991 So. 2d 745, 749 (Ala. Civ. App. 2008) (finding the defendant's statements that a motorcycle was "in good shape," "mechanically sound," "in fine working order," and "mechanically fine" were representations of the "soundness and suitability of the motorcycle" and not statements of material fact); *Young v. Serra Volkswagen, Inc.*, 579 So. 2d 1337, 1339 (Ala. 1991) (defendant's statement that a vehicle was "as good as a new car" was "puffery"); *Pell City Woode Inc., v. Forke Bros. Auctioneers, Inc.*, 474 So. 2d 694, 695 (Ala. 1985) (auctioneer's statements that trucks were "in good condition" and "ready to work tomorrow" were the auctioneer's opinion that did not arise to an express warranty); *but see Gable v. Boles*, 718 So. 2d 68, 71-72 (Ala. Civ. App. 1998) (finding the defendant's statement that the boat he sold to the plaintiff had been "winterized" was a statement of fact).

34. In order to determine whether "a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation, and the knowledge, intelligence, and expertise of the respective parties." *Fincher*, 583 So. 2d at 259. The "mere form of the representation as one of opinion or fact is not itself conclusive," however, and "in questions of doubt the case should be left to the jury." *Id.*

35. For example, in *Fincher*, the plaintiff brought a fraud and breach of warranty claim against the defendant-car dealership based on a defect in his Mercury Sable, which the plaintiff purchased from the defendant. *Id.* at 257. The plaintiff alleged the defendant's sales representative told him that the Sable was a "fine car;" "would be dependable and reliable and that it would give [him] good service;" was "well-suited for his purposes;" and that it was "well and properly constructed." *Id.*

36. The Alabama Supreme Court found summary judgment was proper for the defendant as to the plaintiff's fraud claims on the basis that the "only reasonable inference" to be "drawn from the evidence is that the statements were statements of opinion amounting to nothing more than 'puffery' or prediction concerning the anticipated performance of the Mercury Sable line of automobiles." *Id.* at 259. The court emphasized the defendant's representative essentially told the

plaintiff the automobile "would perform in accordance with his expectations," and the defendant's representative's statements were based simply on the information he received from Ford about its new line of cars. *Id.*

37. Here, Plaintiff alleges Mr. or Mrs. Carter misrepresented to her that "the automatic tailgate would function properly and as intended." Compl. ¶¶ 46, 47, 54. As discussed in subsection 3 above, the specific material fact which Plaintiff alleges was represented to her is unclear, and therefore insufficiently plead under Rule 9(b). In addition, however, the statement, as plead, essentially serves as an opinion or prediction on the part of Mr. and Mrs. Carter that the automatic tailgate would work properly for Plaintiff into the future. It is similar to the types of statements made in *Fincher* and *Hughes*, where the sellers of those vehicles essentially opined or predicted the vehicles would work properly for the buyer-plaintiffs into the future, and which were therefore found to not be statements of material facts on which those plaintiffs could rely.

38. Moreover, in contrast to the statements like the one made in *Gable* – where the defendant allegedly told the plaintiff (who was purchasing the defendant's boat) that the boat was "winterized" – the alleged representation made by Mr. or Mrs. Carter is not a statement of the current or previous condition of the Yukon. For example, the Complaint does not specifically allege Mr. or Mrs. Carter told Plaintiff that the Yukon's tailgate was functioning properly at the time

it was sold, or that they had never experienced any issues with the automatic tailgate feature on the Yukon. Rather, the statement as plead is more of a prediction as to how the automatic tailgate feature would operate into the future. It is, therefore, akin to an opinion or prediction that does not amount to a material fact.

**B. The Amount-in-Controversy Requirement Exceeds $75,000.**

39. A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Here, although the Complaint does not allege a specific dollar amount sought by Plaintiff, the amount in controversy exceeds $75,000.

40. When "the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 754, 754 (11th Cir. 2010). If the jurisdictional amount is not facially apparent from the complaint itself, the court should look to the notice of removal, and "may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* The court may consider affidavits, declarations, and other documents submitted by a removing defendant in support of establishing the amount in controversy. *Id.* at 755.

41. The removing defendant must establish the amount in controversy by a preponderance of the evidence. *Id.* at 768. It is not, however, "required to prove the amount in controversy beyond all doubt or banish all uncertainty about it." *Id.* at 754. When a removing defendant makes specific factual allegations, and can support those allegations, the court may make "reasonable deductions, reasonable inferences, and other reasonable extrapolations" from the pleadings to aid in its determination whether the amount in controversy exists. *Id.*

42. Finally, the court is not required to "suspend reality or shelve its common sense" in determining whether the complaint or other documents satisfies the jurisdictional amount, and it is permitted to "draw on its judicial experience and common sense" in making such determination. *Id.* at 770 (*quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see S. Fla. Wellness Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (emphasizing the amount in controversy is "less a prediction of how much the plaintiffs are likely to recover than it is an estimate about how much will be put at issue in the litigation").

43. Here, the specific nature and extent of the injuries Plaintiff alleges, as well as the nature of damages she claims in her Complaint, and jury verdict award in at least one other case, all provide sufficient evidence to satisfy the amount in controversy requirement.

44. First, while Plaintiff's Complaint is generally devoid of any specific allegations as to the nature and extent of her injuries, it does allege she sustained "serious" and "substantial" injuries as the result of the automatic tailgate "slam[ming] shut on her midsection." Compl. ¶¶ 14, 38. Notably, however, Plaintiff specifically described the nature of the incident, as well as the details of her injuries and medical treatment she received, in a social media post made approximately 10 days after the alleged incident occurred, which is attached as **Exhibit 3**.[4]

45. Specifically, Plaintiff described that, as she was getting an umbrella out of the trunk of her Yukon on the day of the incident, the "hatch back fell/ broke" and "slammed shut" on her back. *See* Exhibit 3. Plaintiff claims she initially thought she "broke" her back and vomited immediately after the tailgate allegedly "slammed" shut on her. *Id.* Plaintiff then went to the hospital or her doctor's office where she underwent an initial X-ray and MRI. *Id.*

46. The MRI subsequently revealed Plaintiff allegedly suffered a "mild bulging disc" in her spine (specifically her "L4-L5" vertebrae), which was "chronic in [her] Lumbar spine." *Id.* Plaintiff claimed she underwent several

[4] In her post, Plaintiff states that she was diagnosed with ovarian cancer. It is unclear whether some of the diagnostic tests, diagnoses, and treatment she described in her post relate to the alleged injuries Plaintiff suffered as a result of the incident, or are separately related to her cancer diagnosis. This fact, however, further indicates the complex nature of the Plaintiff's claimed injuries, treatment, and damages, and serves to further support the amount in controversy exceeding $75,000.

additional MRIs, and that one of her subsequent MRIs revealed the injuries she allegedly sustained in the incident exacerbated pre-existing chronic back issues. *Id.*

47. Plaintiff further claimed she experienced persistent and "severe pain" as a result of the incident. *Id.* She claimed it feels as though she had been "in a horse saddle for about a week;" could barely walk; barely get out of a chair; could not lay down; and had to miss work for an unspecified amount of time as a result of her injuries. *Id.* She further described the severe pain was accompanied by numbness and tingling going down "the back of her legs and straight across [her] lower back from hip to hip," and that approximately a week after the incident she fell due to her in ability to walk properly. *Id.* This fall led to Plaintiff being admitted to the emergency room. *Id.*

48. Plaintiff described she experienced incontinence as a result of the incident and continued to experience incontinence in the week following. *Id.* Plaintiff also stated that she was either diagnosed with, or had symptoms consistent with, cauda equina syndrome. *Id.* Cauda equina syndrome ("CES") "occurs when there is dysfunction of multiple lumbar and sacral nerve roots of the cauda equina." Diana Wiseman, *Cauda Equina Syndrome*, AMERICAN ASSOCIATION OF NEUROLOGICAL SURGEONS (April 5, 2024), https://www.aans.org/patients/conditions-treatments/cauda-equina-syndrome/. The

cauda equina is the "collection of nerves at the end of the spinal cord." *Id.* CES "commonly results from a massive herniated disc in the lumbar region," and "urgent/emergent surgery is usually the treatment of choice" for CES. *Id.*

49. Moreover, Plaintiff described several hospital and physician visits in the 10 days following the incident. Exhibit 3. She described several pain medications (including "[h]igh dose steroids" and a "lot of other pills") she was prescribed, as well as other treatment she underwent at the time. *Id.* Plaintiff describes that her physicians consulted with "Neuro and Ortho spine," and that, at the time she authored the post, she was admitted to the "SICU." *Id.* While there, Plaintiff continued to have "complete loss of bladder control" and was on oxygen. *Id.*

50. Plaintiff's post ultimately documents extensive injuries, medical tests, diagnoses, and treatment in just 10 days following the alleged incident. Given these documented injuries, diagnoses, tests, and treatment, as well as the fact that she authored the post from the "SICU" and anticipated being there "awhile," it is reasonable to assume Plaintiff's treatment continued well past July 28, 2022. While GM LLC currently does not have any of Plaintiff's medical bills or medical records, it is fair to assume that the costs of her medical bills alone total well over $75,000. This, of course, does not consider additional damages for pain and suffering, mental anguish, or potential lost wages.

51. Further, Plaintiff alleges many apparent chronic or potentially permanent injuries in her post. These include her "chronic" back injuries and cauda equina syndrome symptoms. Courts have routinely held that where a plaintiff alleges suffering from "serious and permanent injuries," such injuries are sufficient to satisfy the amount in controversy. *See, e.g., Jones v. Novartis Pharm. Co.*, 952 F. Supp. 2d 1277, 1286 (N.D. Ala. 2013) (finding the amount in controversy requirement met because the plaintiff alleged "serious personal injury" that was "permanent in nature"); *see also Bell v. L & B Transp. LLC*, 2020 U.S. Dist. LEXIS 265320, at *11–13 (M.D. La. May 14, 2020) (amount-in-controversy met where the plaintiff suffered "several disc herniations and bulges in his cervical and lumbar spine for which he has received chiropractic treatments for neck and back pain and undergone two lumbar steroid injections").

52. Second, Plaintiff asserts a claim of wantonness against GM LLC and claims punitive damages, in addition to compensatory damages. *See Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered); *see also Overton v. Wyeth*, Case No. CA 10-0491, 2010 U.S. Dist. LEXIS 145143, at *13-14 (S.D. Ala. Oct. 29, 2010) (explaining that

when a plaintiff claims wantonness they are claiming their damages "should be greater" and implying that their injuries "could have been prevented").

53. While GM LLC denies that Plaintiff is entitled to punitive damages, such a request for an unspecified amount in punitive damages should contribute to satisfying the amount in controversy requirement.[5] *See Jones v. Hartford Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 16675, 2013 WL 550419, at *1 (N.D. Ala. Feb. 7, 2013) (finding "the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages . . . the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332"); *see also Smith v. State Farm Fire and Casualty Co.*, 868 F. Supp. 2d 1333, 1335 (N.D. Ala. 2012) (emphasizing the "court is willing to go so far as to inform plaintiffs . . . who want to pursue claims against diverse parties in state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, [that they] must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that the plaintiff will never accept more").

54. This is particularly the case when a plaintiff requests at least $20,000 in compensatory or other damages on top of her claim for punitive damages, as

[5] Part of the reason that Plaintiff is not entitled to punitive damages is because the alleged incident here involves "Old GM" conduct, for which punitive damages cannot be recovered. *See Butler Wooten & Peak LLP v. GM LLC (In re Motors Liquidation Co.)*, 943 F.3d 125, 127 (2nd Cir. 2019) (holding "New GM" is not liable for punitive damages with respect to claims arising from accidents allegedly involving automobiles manufactured by "Old GM" (*i.e.,* General Motors Company prior to the sale of its bulk assets pursuant to a 2009 bankruptcy action)).

Plaintiff does here. *See Broadway*, 4 F. Supp. 3d at 1276 n.2 (finding the amount in controversy requirement satisfied "because Broadway [sought] $20,000 in compensatory damages plus punitive damages"); *see also* Ala. Code § 12-11-30 (explaining the minimum amount in controversy for the Alabama Civil Circuit Courts exercising exclusive jurisdiction over a case is $20,000).

55. Finally, at least one recent jury verdict in Alabama with similarly alleged facts, injuries, and damages resulted in a multi-million-dollar verdict. In *Abbott v. Mega Trucking, et al.*, Case No,. 2:20-CV-776, 2023 Federal Jury Verdicts Rptr. LEXIS 32 (M.D. Ala. March 31, 2023), the plaintiff was involved in a tractor-trailer collision which caused his tractor-trailer to turn over. The plaintiff experienced a "low-back injury implicating the lumbar and thoracic areas" as a result. *Id.* He also suffered ongoing "pain, as well as ED, and occasional bowel incontinence." *Id.* The plaintiff ultimately underwent surgery to repair a large, herniated disc suffered as a result of the accident. *Id.* At trial, the jury returned a verdict for the plaintiff in the amount of $1,460,000. *Id.*

56. Ultimately, based on Plaintiff's claims of serious, chronic, and potentially permanent injuries; the extensive treatment and medical care she underwent immediately following the alleged incident and likely thereafter; the nature of the alleged incident itself; the specific nature of the type of damages Plaintiff claims in her Complaint; and the similarity of this case with at least one

other recent multi-million dollar verdict, there is a "plausible allegation" that the amount in controversy exceeds $75,000 at the time of removal, as required under 28 U.S.C. § 1332(a).

57. Consequently, there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

58. By filing this Notice, GM LLC does not waive any of its defenses, including but not limited to any defenses under Rule 12 of the Federal Rules of Civil Procedure.

59. All conditions and procedures for removal have been satisfied.

60. Finally, GM demands a trial by jury on all issues so triable.

**WHEREFORE**, pursuant to 28 U.S.C. § 1332 and 1441 *et seq.*, Defendant GM LLC respectfully requests this action be removed from the Circuit Court of Etowah County, Alabama, to the United States District Court for the Northern District of Alabama, Eastern Division.

Respectfully submitted this 10th day of July, 2025.

*/s/ Phil Pullen*
*One of the Attorneys for Defendant*
*General Motors LLC*

**OF COUNSEL:**
Michael L. Bell
Reid C. Carpenter
Phillip J. Pullen
**LIGHTFOOT, FRANKLIN & WHITE, LLC**
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
(205) 581-0700 (phone)
*mbell@lightfootlaw.com*
*rcarpenter@lightfootlaw.com*
*ppullen@lightfootlaw.com*

***Attorneys for Defendant General Motors LLC***

**CERTIFICATE OF SERVICE**

I certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on July 10, 2025, which will send electronic notification of such filing to the parties. If CM/ECF indicates that Notice needs to be delivered to any of the parties, I certify that a copy will be sent via U.S. Mail, properly addressed, postage prepaid.

*/s/ Phil Pullen*
Of Counsel